UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 20-CR-326(RPK)

Plaintiff , :

United States Courthouse

-against- : Brooklyn, New York

DZENAN CAMOVIC, :

September 21, 2022

Defendant. : 11:00 a.m.

- - - - - - - - - - - - - - X

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE RACHEL P. KOVNER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: BREON PEACE
United States Attorney
BY: ARTIE MCCONNELL,
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York

For the Defendant: LAW OFFICES OF ROBERT G. STAHL LLC
53 Cardinal Drive, 3rd Fl, Ste 4
Westfield, NJ 07090
BY: ROBERT G. STAHL, ESQ.
LAURA GASIOROWSKI, ESQ.

Court Reporter: Andronikh M. Barna
225 Cadman Plaza East
Brooklyn, New York
(718) 613-2178

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

THE CLERK: United States of America versus Dzenan Camovic.

Counsel, please state your name for the record.

MR. MCCONNELL: Your Honor, good morning.

Artie McConnell for the United States.

THE COURT: Good morning.

MR. STAHL: Good morning, Your Honor.

Robert Stahl and Laura Gasiorowski on behalf of Mr. Camovic, who is in court.

THE COURT: Good morning.

MR. GALERKIN: Good morning, Your Honor.

Darren Galerkin from U.S. Probation.

THE COURT: Great.

Good morning, everybody.

And good morning, Mr. Camovic.

So let's see. We're here for sentencing today in this case. The charges arise out of an attack on New York City police officers on June 3rd of 2020. Mr. Camovic was charged with various crimes related to that conduct in state court and in federal court and ultimately he entered into a plea agreement to resolve both the state cases -- state case and the federal case through guilty pleas. Pursuant to that plea agreement, Mr. Camovic pled guilty before me.

And is it Camovic or Camovic?

THE DEFENDANT: Camovic. But whichever way is easier.

THE COURT: Well, I want to get it right, so Camovic.

Mr. Camovic pleaded guilty in federal court to two charges pursuant to a plea agreement. Those are charges of Hobbs Act robbery relating to the theft of an officer's service weapon and then possessing, brandishing and discharging a firearm in furtherance of a crime of violence, which is that same Hobbs Act robbery, in violation of 18 U.S.C. 924(c).

Mr. Camovic pleaded guilty in state court to charges related to the same conduct and as part of the plea agreement the government and Mr. Camovic have both agreed that Mr. Camovic receive a total sentence of 360 months imprisonment in this case and the same sentence in the state case and that those sentences should run concurrently and be served in federal custody, and the Probation Department concurs with that sentencing recommendation.

So that's, I think, a summary of where we are from my perspective. Let me go over the documents that I've seen to make sure that I've seen everything that I should have seen and also that the parties have seen those documents.

I reviewed the presentence investigation report in this case, which is dated June 30th of 2020.

I've reviewed a sentencing recommendation from the Probation Department, which is dated June 30th, 2020, as well.

As I mentioned earlier, the Probation Department recommends a sentence of 360 months in custody, which would consistent of a 240-month sentence on Count One, which is the statutory maximum for that count, to be followed by a hundred -- a sentence of 120 months on Count Two, which would, as I said, be consecutive to the sentence on Count One. Both those counts would carry a sentence of an initial term of three years of supervised release, release of three years.

The supervised release would include the following special conditions:

That Mr. Camovic or Camovic refrain from contacting the victim of the offense or the victims of the offense, meaning that he not attempt to meet in person or communicate by letter or telephone or e-mail or the internet or through a third party with any of those victims without the knowledge and permission of the Probation Department;

That Mr. Camovic will not associate in person or through mail or electronic mail or by telephone with any individual with an affiliation to any organized crime groups or gangs or other criminal enterprise, and that Mr. Camovic not frequent any establishment or other locale where those groups may meet, pursuant to but not limited to a prohibition list provided by the Probation Department;

That if Mr. Camovic is removed from the country, he may not reenter the United States illegally;

And that Mr. Camovic shall cooperate with and abide by all instructions of Immigration authorities.

The Probation Department notes that Mr. Camovic is likely to be removed from the United States, but recommends that a term of supervised release be imposed because Mr. Camovic has a strong connection to the United States.

And I will note that while Mr. Camovic has agreed to be removed from the United States, that obviously will require further Immigration proceedings.

So with respect to the other conditions, Probation recommends the condition restricting the defendant from contacting the victims of the offense for the protection of the victims and it recommends the condition regarding affiliation with organized crime groups because of the evidence regarding Mr. Camovic's past interest in terrorist groups.

The Probation Department notes that I must impose a $200 special assessment.  It recommends that I impose that assessment.

It recommends that I excuse the mandatory drug testing provision of 18 U.S.C. 3563(a)(5), although of course Mr. Camovic may be required to submit to drug testing to ensure compliance with the conditions of his supervised

release.

The Probation Department does not recommend that I impose a fine because there's no evidence that Mr. Camovic has the ability to pay a fine.

With regard to Count One, restitution is mandatory for this offense, but the Probation Department notes that there are no affidavits of loss that have been submitted yet, so the loss amount or the restitution amount is not known at this point. And I'll ask the parties at some point to address that issue and whether I should set an evidentiary hearing date or a date to address restitution later on.

So that's the Probation Department's sentencing recommendation.

And there are two addendums to the presentence report. There's a first addendum that's dated July 25th and a second addendum dated August 1st.

I also have sentencing submissions from both sides, a defense submission dated July 28th and a government submission dated August 1st.

So have all the parties received the submissions that I have just described?

MR. MCCONNELL: Yes.

MR. STAHL: Yes, Your Honor.

THE COURT: Okay. And then I also have a preliminary order of forfeiture which pertains to the firearm

and ammunition at issue in this case.

I take it both parties have seen that as well?

MR. STAHL: Yes, Your Honor.

MR. MCCONNELL: We have.

THE COURT: Okay. Have there been any other submissions in connection with the sentencing that I should have reviewed, but have not mentioned?

MR. MCCONNELL: I don't believe so, Judge.

MR. STAHL: I don't believe so either, Your Honor.

THE COURT: Okay. So let's start with the presentence investigation report.

Mr. Stahl, have you read that report and discussed it with your client?

MR. STAHL: I have, Your Honor.

THE COURT: And, Mr. Camovic, have you also reviewed that report?

THE DEFENDANT: Yes.

THE COURT: And have you had enough time to discuss it with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Okay. Has the government also reviewed the presentence report in this case?

MR. MCCONNELL: We have, as well as the two addenda.

THE COURT: Okay. Great.

So let's just discuss any objections to the factual

accuracy of the presentence report. I know there was some back and forth in the addenda in that there were some modifications that the Probation Department made in the addenda. So I'm happy to hear from the parties, with the understanding that I'm adopting the PSR with its addenda. So anything that the Probation Department has already adopted, we don't need to go over, but I'm happy to hear from the parties about anything else.

MR. STAHL: Your Honor, is it okay if I lower my mask while I'm --

THE COURT: Yes, it's fine. Anybody is welcome to remove their mask while they're speaking.

MR. STAHL: I think that with both the government and the defense's submissions and those included in the addendum, I don't think there's anything that affects the guidelines or something in the PSR going forward to the Bureau of Prisons that needs to be argued about here today. So I think as long as the addendums go with the presentence report, we're fine.

THE COURT: Okay.

And anything from the government?

MR. MCCONNELL: No. I agree.

THE COURT: So I will adopt the PSR as factual recitations as amended by the two addenda.

And the PSR will be made part of the record and

placed under seal so that if an appeal is taken in this case, counsel can have access to the report without further application to the Court.

Okay. So as you all know, I'm not required to follow the Sentencing Guidelines, but I'm required to consider them in imposing sentence, and to do that I have to accurately calculate the guidelines range.

In this case, I think there was a plea agreement in which the parties stipulated the particular calculations of the guidelines and then I think those stipulated guidelines calculations match those that are in the PSR as amended. Is that correct?

MR. MCCONNELL: Yes. I'm just double-checking, but yes.

THE COURT: Okay.

MR. STAHL: Your Honor, the only -- and it's in the agreement, on page 3 of the plea agreement. The only thing is, for the judgment of conviction, how to sentence on Count One and Two, I'd like to be heard. We have an agreement to account for time already in custody for the 27 months.

THE COURT: Yes.

MR. STAHL: And since he's being sentenced in two jurisdictions, it's just asking, by agreement, that Count One be sentenced not to 240 months, but 240 minus the 27 months to 213. And then Count Two, obviously, is the 120 to run

consecutive so that the Bureau of Prisons doesn't have an issue with the way the JOC reads.

THE COURT: This reminds me that I'm not sure that I know from the materials I've received that -- the state sentencing, has that occurred or not occurred?

MR. STAHL: That will occur this afternoon.

THE COURT: Okay.

MR. STAHL: And so that we would ask the JOC to -- from here, to say that it's completely concurrent with the state sentence to be imposed later this afternoon and cite the case number there and vice versa.

THE COURT: Okay. So I'll be happy to hear from the parties about this in a little more detail. I want to start just by calculating the guidelines and getting those on the record. This does not sound to me like it goes to that; is that right?

MR. STAHL: No. The calculations are the calculations. I just wanted to alert Your Honor.

THE COURT: Yes, yes. Okay, great.

All right. So the guidelines calculations as they're set out in the second addendum to the PSR, basically they start -- there are two counts.

Count One is the Hobbs Act robbery count. The base offense level for that count under Sentencing Guideline 2B3.1 is 20. There's a six-level enhancement that applies because

victims sustained permanent bodily injury to their neck and finger, respectively. That's under Sentencing Guideline 2B3.1(b)(3)(C). There's a one-level enhancement that applies because a SIG Sauer semiautomatic duty weapon was taken from an NYPD officer. That's under 2B3.1(b)(6). There's a victim related enhancement of twelve points that applies because the offense is a felony that involved -- that was intended to promote a federal crime of terrorism. Under those circumstances, if there are offense level -- the offense level is increased by twelve levels, so that's a twelve-level enhancement. And then there is a final victim related enhancement if a defendant knowing or having reasonable cause to believe that a person was a law enforcement officer assaults such officer during the course of the offense. So that's a six-level enhancement. That leads to an adjusted offense level of 45 on Count One.

So then as to Count Two, the guidelines sentence for that count is the term of imprisonment that's required by statute, which I take it is the sentence of ten years of imprisonment.

So starting from the 45-level offense level calculation for Count One, the PSR deducts three points for acceptance of responsibility. That yields an offense level of 42. Mr. Camovic has no prior criminal history, but because the offense involved or was intended to promote a federal

crime of terrorism, the criminal history category is VI. Based on an offense level of 42 and a criminal history category of VI, the guidelines imprisonment range would be 360 months to life for Count One. But because the statutory maximum is lower than that, the guidelines range becomes the statutory maximum, which is 240 months. And then there's a minimum term of imprisonment of ten years on the second count, so that leads to a total guidelines sentence on Count One of 240 months, to be followed by a ten-year consecutive sentence on Count Two.

So those are the guidelines recommendations set out in the PSR. Does either party have any objection to the guidelines calculations I've just stated?

MR. MCCONNELL: No.

MR. STAHL: No, Your Honor.

THE COURT: Okay. So I am going to adopt those guidelines calculations.

Is either party seeking a departure from the guidelines?

MR. MCCONNELL: No.

MR. STAHL: No, Your Honor.

THE COURT: Okay. So I'm happy to hear from the parties about the sentence in this case. I've obviously read the submissions and there's no need to go over everything that's in the submissions.

And as I mentioned, one issue I'm hoping the parties can address is just the restitution issue.

Also, I'm happy to have defense counsel speak to any of the conditions of supervised release if there is any dispute about those, because I'm not sure they were directly addressed.

So I tend to recognize the government first and then defense counsel. And then Mr. Camovic is welcome to speak if he wants to speak, but does not have to.

MR. MCCONNELL: Sure. Thank you, Your Honor.

Just with respect to the restitution issue first, I think Counsel and I can confer. I don't think it's an issue that we can't deal with. As far as an evidentiary hearing post sentencing, I don't see that as being necessary. We've had very open dialogue with Counsel and I think this is an issue we can pretty readily resolve. You'll note that there have not been any affidavits of any loss that have been submitted. So I think we'll -- we'll address that, but I don't foresee the need for any hearing.

THE COURT: So what I'm anticipating I would do is, I would set a schedule for the government to make a submission letting me know if there has been the calculation of some type of restitution amount that should be awarded in this case.

MR. MCCONNELL: Sure.

THE COURT: There may well be no dispute about that,

it sounds like, but I'll give the defense an opportunity to respond to that and then I'll enter a restitution order.

So I can set a schedule for that.

MR. MCCONNELL: That's fine.

And I certainly won't repeat what's in our submission. I think we've made a fairly comprehensive sentencing submission. And obviously, Your Honor knows about the state matter, which is part of the global resolution of this really horrific incident.

But I understand that 30 years is obviously a significant sentence. It's certainly justified in this case from the government's perspective. I think that it's important to remember the context in which this occurred. This was at a time when the City was still in the midst of the worst part of the pandemic. It was at a time when there was a curfew in place, when we were seeing some of the worst social upheaval in the City for many, many years. And it was in that context that the men and women who were involved in this attack were doing their job. They were out in the street. There were people lawfully protesting, but nevertheless they were subject to insults, things being thrown at them. And in the face of that violence, they did their job professionally and I think that they deserve to be commended for that.

And it was in that context that this defendant, while they were out there on the street doing their job, this

defendant was lying in wait with a knife, having deleted his phone, fully intending on that night to kill as many police officers as possible. And I think it's really a miracle that that didn't happen. I'm not going to speculate as to what goes through this defendant or really anyone's mind when they decide to do something like that, but certainly the preponderance of the evidence shows that this was part of some Jihadist fantasy that he was trying to live out and it really is only a miracle that no one here was killed.

There's obviously permanent injury, there's going to be permanent psychological damage, and I think that the 30-year sentence here is sufficient to address that. I think it's sufficient to promote not only respect for the law in general, but respect for the men and women of the New York City Police Department who we rely on every day, whether we want to acknowledge it or not. And it's necessary to incapacitate someone who is clearly shown that he is prone to extremely violent criminal conduct and to send a deterrent message to other people who would even consider doing something like that in the future.

So I think the sentence of 30 years to resolve both the state and federal case, with a consent to be removed out of this country thereafter, is sufficient to meet the needs of sentencing as articulated in 3553(a).

THE COURT: Thank you.

Can I just ask, the consent to be removed, is that something that requires court involvement or not?

MR. MCCONNELL: It's stipulated to in the plea agreement. I don't believe that there is anything additional that needs to be done, no. There were additional forms and documents that I believe were signed, but I don't think it requires additional court involvement.

THE COURT: And I take it that -- just since you referenced the victims and I see that there are a number of people here today, but victim notification, I take it, was made in this case?

MR. MCCONNELL: Yes, victim notification has been made. And I've been told that none of the victims wish to speak or be heard here today.

THE COURT: Okay, great.

Okay. I'm happy to hear from you, Mr. Stahl.

MR. STAHL: Thank you, Your Honor.

Similar to the government, we've submitted a detailed sentencing memorandum and also the detailed letter from Mr. Camovic's -- one of his sisters, Dzenita, which I believe lays out a good portion of what we've spoken about.

There's no doubt that Mr. Camovic's actions caused these injuries and it could have been much worse. Fortunately for the victims, Mr. Camovic's injuries were significantly much worse than the police officers'. I truly believe that,

based upon the evidence and the family history and his history throughout school and his undiagnosed depression and anxiety and the feeling of isolation and all the things that we've talked about in detail in our sentencing memo, that his goal that evening was more not to kill as many police officers as possible, but for himself to die. And obviously, that's reckless conduct because whenever deadly weapons are involved, that can lead to disastrous results not just to himself.

But this sentence that was carefully negotiated between the parties, and also with the consent of the police officers involved, reflects a sentence that adequately addresses this issue but there's not more than necessary.

Mr. Camovic, for years -- and this again, as we said in our memo, is not by way of excuse at all. No one is excusing his conduct. It simply is to -- gives the court some of the background to the individual. We have, as we noted, a family that fled from a war-torn area and landed in Germany. And Germany at the time had let people know that they were open to immigrants and to refugees, but once they got there were told it's best that you leave. And they fled to the United States, hoping for the American dream. And the entire family, including Mr. Camovic here in court, has worked extremely hard. But of course they have no legal papers here, at least the older ones. They have three children that were born in the United States. That is not the issue, but the

three older children and the parents themselves. And so like many immigrants, who are law-abiding and working hard every day, they have this specter of coming into contact with law enforcement and going into removal proceedings. And that was, of course, heightened during certain parts of the last several years. And this feeling of isolation and desperation and lack of any future started to obsess in -- on Mr. Camovic and a feeling of helplessness.

And this was a terrible, terrible, tragic mistake in judgment, one that both the officers will be living with, but Mr. Camovic will be living with for the next 30 some-odd years and then facing removal from a country, the only country he's known, and a world that will have changed in more than a quarter of a century.

And so we believe that this plea and this sentencing is a fair resolution to all parties and we ask that the Court impose the sentence as structured.

Mr. Camovic's family are law-abiding, completely hard-working individuals who support their son. They have waived their right to speak on his behalf. And Mr. Camovic has waived his right and asked me to present for them, and we do so basically through our memo and through the letters attached.

THE COURT: So, Mr. Camovic, to confirm with you, you don't want to speak at this proceeding; is that right?

THE DEFENDANT: No, thank you.

THE COURT: And, Mr. Stahl, will you give me one more time the language and then I'll ask the government if that's --

MR. STAHL: Yes, Your Honor.

We would ask, because this is a dual proceeding in two different jurisdictions, that on Count One you sentence Mr. Camovic to -- it's actually 212.5 months, but 212 or 213 months. I would ask for 212. And then the 120 months on Count Two to run consecutive. And for this time to run concurrent with the soon-to-be-imposed state sentence this afternoon in *The People vs. Dzenan Camovic*, and that's Indictment No. 928/2020.

THE COURT: Okay.

MR. STAHL: And I don't know if Your Honor would like to hear now or later. We would ask Your Honor to recommend a particular location to the Bureau of Prisons. We understand of course in all these cases it's nonbinding and is simply a recommendation, but we would ask for FMC Devens, which is the medical facility in Massachusetts, due to his ongoing postoperative needs and psychological needs. So we would ask that Your Honor, in the JOC, to make that recommendation. Obviously, as I said, the Bureau of Prisons will do an independent analysis. But speaking with our prison expert and the medical experts, that would be our

recommendation.

THE COURT: So just on the structure of the sentence. So the proposal to impose a sentence of 211.5, approximately, months on -- do we know what the actual -- I take it the objective here is to give Mr. Camovic credit for the time that he has spent in federal custody so far running to that sentence. Is that the gist? What are we doing there?

MR. STAHL: Yes, it's the time he spent in custody, whether it's federal or state, but we have to divide it out. So it's actually -- he's been in custody for 27 months and 14 days, so it would actually be 332.5 months. I'm sorry, excuse me, 212.5 months on Count One and then the 120 on Count Two.

THE COURT: Okay.

Does the government want to be heard on this?

MR. MCCONNELL: No, I -- this is really just a mechanism to, again, ensure that Mr. Camovic gets credit for time that he's already served and to honor the spirit of the global agreement, which is a 30-year sentence.

THE COURT: Okay. So the government agrees that I should impose a sentence of 212-and-a-half months on Count One and 120 months on Count Two?

MR. MCCONNELL: The math seems right, yes.

THE COURT: Okay.

MR. STAHL: That's simple math. I checked three

times. Yes.

THE COURT: Okay. All right. Okay. All right, great.

So let me just go over the factors that I've considered in connection with sentencing in this case. I've considered the advisory guidelines sentence, which is a total of 240 months of imprisonment on Count One, to be followed by a sentence of ten years on Count Two, so it's a 360-month guideline range.

Obviously, I don't have to follow the guidelines, they are only one factor that I have to consider in deciding the appropriate sentence. I'm required to consider factors that are set out in Section 3553(a) of federal law, which include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes by the defendant; the need to provide the defendant with needed education or vocational training or medical care or other correctional treatment in the most effective manner; the kinds of sentences available; the guidelines range; any pertinent policy statement; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to

the victims of the offense. So I've consider those factors. Also under Section 3553(a), I'm ultimately required to impose a sentence that's sufficient but not greater than necessary to comply with the purposes of sentencing that I just described.

Now, in this case the parties have entered into a plea agreement under Rule 11(c)(1)(C) of the Rules of Criminal Procedure. And that rule allows the parties in the case to enter into a plea agreement where they agree that a particular sentence is appropriate. And here the parties have agreed that a 360-month sentence of incarceration is appropriate. And to implement that sentence, they agree that the sentence should be structured as 212-and-a-half months of imprisonment on Count One and 120 months of imprisonment on Count Two to run consecutive to that because that's a way of reaching a total of 360 months with the time that the defendant has already spent in custody. So I can either accept or reject that plea agreement, but if I reject it, Mr. Camovic would have the right to withdraw his guilty plea.

After considering the facts in this case and the parties' submissions and the recommendation of the Probation Department, which is also to impose a 360-month sentence, I intend to accept the parties' plea agreement and to impose the recommended sentence consisting principally of 360 months of imprisonment because I find that sentence is sufficient but not greater than necessary to serve the

purposes of sentencing in Section 3553(a).

Just to briefly describe how those factors play out here.

The nature and circumstances of the offense obviously weigh in favor of a significant sentence, which this sentence is. This is a horrific crime that resulted in serious injuries to police officers who were just doing their jobs in a difficult environment during the COVID pandemic and during widespread protests. They were approached by Mr. Camovic, completely unprovoked, and Mr. Camovic immediately stabbed one of the officers from behind. He began chasing a second officer and lunging at that officer and eventually throwing a knife at him. He then ran back to the first officer and began to attack him again and took that officer's service weapon after a struggle and then he fired multiple shots at other officers on the scene. One officer was shot in the hand and lost a finger and another officer was also shot. Responding officers ultimately returned fire. They shot Mr. Camovic and took him into custody. In the search of Mr. Camovic's residence after he was apprehended, officers retrieved materials associated with Islamic extremist groups, including ISIS propaganda and speeches of a radical Islamic cleric, who is a leader of al-Qaeda in the Arabian Peninsula. The parties have stipulated that this offense was intended to promote terrorism, meaning that it was intended to

encourage further or bring about a federal crime of terrorism where I find that was the case here. So obviously, a significant sentence is supported by the nature and circumstances of the offense and similarly by the need to deter, both specifically and generally, these types of offenses.

I have obviously considered Mr. Camovic's history and characteristics. Mr. Camovic was born in Germany and his family was not legally present there. They later moved to the United States and the family has been attempting to obtain legal status here but aside from the children who were born in the United States, they had not yet done so, so that the family faced some challenges related to that, including financial limitations and limitations on Mr. Camovic's ability to lawfully work and travel. So I am aware of those, but obviously many people face similar hardships and this type of crime is very unusual, not committed by most people who face these kinds of hardships. These hardships don't in any way excuse this underlying offense conduct.

I considered the fact that Mr. Camovic has agreed to be removed from the country after his conviction.

I considered the fact that he's accepted responsibility through his guilty plea and that he's therefore spared the victims the need to testify at trial. And that this plea is part of a global settlement, it also spares the

victims the need to testify at trial on the state case and resolved those state charges. So ultimately, a 360-month sentence is a very substantial sentence that the parties have agreed is reasonable and that affords appropriate punishment to this offense.

So I intend to impose that agreed-upon sentence consisting of 212.5 months on Count One and 120 months to be consecutive to that on Count Two, thereby affording credit for the time spent in custody, which will ultimately amount to 360 months.

I intend to impose a term of supervised release after Mr. Camovic is released from custody of three years on each of those two counts of conviction to run concurrent.

I intend to impose the special conditions recommended by the Probation Department for essentially the reasons stated by the Probation Department, which are:

That Mr. Camovic shall refrain from contacting any victims of the offenses, meaning he shall not attempt to meet in person or communicate by letter or telephone or e-mail or the internet or through a third party without the knowledge and permission of the Probation Department with those victims;

That Mr. Camovic shall not associate in person, through mail or electronic mail or telephone with any individual with an affiliation to any organized crime groups or gangs or other criminal enterprise nor shall the defendant

frequent any establishment or other locale where those groups may meet pursuant to, but not limited to, a prohibition list provided by the Probation Department.

If Mr. Camovic is removed from the country, as he's agreed to be, Mr. Camovic may not reenter the United States illegally. And whether Mr. Camovic is removed or not, he shall cooperate with and abide by all instructions of Immigration authorities.

I will also impose the standard and mandatory conditions of supervised release.

Does either party want me to read out loud the standard conditions of supervised release or the mandatory conditions of supervised release?

MR. MCCONNELL: No, Your Honor.

THE COURT: Okay. All right. So those conditions are imposed.

I will impose a $200 special assessment, which is required.

I am not going to impose a fine because I find that Mr. Camovic lacks the ability to pay a fine.

I will excuse the mandatory drug testing provision of 18 U.S.C. 3563(a)(5) based on the Probation Department's recommendation and the information in the PSR.

So restitution is mandatory in this case. And Mr. Camovic agreed in the plea agreement to pay restitution in

the full amount of each victims' losses, but there are no affidavits of loss that have been filed in this case and so the loss amount is unknown and I can't impose restitution at this time. I am allowed to defer the entry of the restitution order for up to 90 days after sentencing. So my proposal is that the government advise me by October 21st of this year as to its view on whether it's possible to impose restitution and, if so, the amount of restitution based on the loss affidavits of the victims and whether there is agreement with defense counsel on that amount. If the parties disagree, then I would ask the government to make its submission in support of the restitution calculation by October 28th, and then I will ask the defendant to respond by November 4th.

Okay. I might have already mentioned this, but I'm waiving a fine because Mr. Camovic does not have the ability to pay a fine.

So that's the sentence I intend to impose.

Does either counsel know of any legal reason why the sentence cannot be imposed as stated?

MR. MCCONNELL: No, Your Honor.

MR. STAHL: No, just the technical language on the JOC because Bureau of Prisons will give us difficulty if Your Honor reflects 240 minus something, as opposed to just the 212.5.

THE COURT: Sure.

MR. STAHL: And then the 120 and then this sentence to run concurrent with *The People vs. Camovic* and with that indictment number. And then the recommendation of FMC Devens.

And lastly, we would just ask, if Probation hasn't done it, that they attach the medical records that have been supplied from the various hospitals to his PSR so that goes with him to the Bureau of Prisons.

THE COURT: Okay. Let me just take these in turn.

So you want the language in the judgment to say the sentence on Count One is 240 months?

MR. STAHL: No.

THE COURT: Or not?

MR. STAHL: No.

THE COURT: Yes.

MR. STAHL: If it says that, we're going to have a problem with BOP.

THE COURT: Right. So based on my understanding, in order for the defendant to serve a total term of 360 months because of time that he spent in custody already, which would not be credited to him based on the rules for when somebody is in state custody versus federal custody, I think I should just say in the judgment that the sentence on Count One is 212-and-a-half months and that the sentence on Count Two is 120 months to run consecutive. And we will know that the reason that I'm doing that is to result in a time in custody

of 360 months. That's my intention.
Does that seem right?
MR. STAHL: Yes. Thank you.
THE COURT: And then I will indicate that that should run concurrent with the sentence imposed in Case 928/2020.
MR. STAHL: Yes.
THE COURT: Okay.
Then as to the designation issue, does the government want to speak to that?
MR. MCCONNELL: The designation of the facility?
THE COURT: Yes. So do you have any objection to my saying in the judgment that I recommend that Mr. Camovic be placed in FMC Devens?
MR. MCCONNELL: No. I mean, my understanding is Bureau of Prisons will take that into consideration, but ultimately it's their call. So that's fine.
THE COURT: Okay. So I will make that recommendation so that Mr. Camovic can obtain appropriate medical treatment.
And then you would like me to ask that the Probation Department amend its report to include the medical records that you've submitted?
MR. STAHL: Yes.
THE COURT: Probation, is that something you can do?

MR. GALERKIN: Your Honor, I can do that.

THE COURT: Okay. So I will ask Probation to make that recommendation.

MR. STAHL: Thank you, Your Honor.

THE COURT: Okay.

All right. So the sentence is imposed as stated.

Are there open counts in this case?

MR. MCCONNELL: Yes. And we'll move to dismiss those.

THE COURT: So all open counts in this case are dismissed.

Mr. Camovic, you have the right to appeal from the judgment in this case, to the extent that you have not waived it. I have no knowledge of any ground for an appeal and you entered a guilty plea pursuant to a plea agreement, but I have to advise you of that right. If you're unable to pay for the cost of an appeal, you can apply for leave to appeal in forma pauperis without paying those costs. And if that application were granted, you could appeal without the prepayment of any fees. The notice of appeal would have to be filed within 14 days of entry of the judgment of conviction in this case, which would happen within the next day or two.

Okay. I think that's everything from our perspective.

Is there anything else from the parties'

perspective?

MR. STAHL: No, Your Honor.

MR. MCCONNELL: No, Your Honor. Thank you.

THE COURT: Okay, great. Thanks, everybody.

MR. STAHL: Thank you.

(Matter concluded.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Andronikh M. Barna December 21, 2022

ANDRONIKH M. BARNA DATE