UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 20cr326(RPK)

Plaintiff,

-against- : United States Courthouse
: Brooklyn, New York

DZENAN CAMOVIC,

Defendant. : Tuesday, March 15, 2022
: 2:30 p.m.

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR A PLEADING
BEFORE THE HONORABLE RACHEL P. KOVNER
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: UNITED STATES ATTORNEY'S OFFICE
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: CRAIG HEEREN, ESQ.
JOSH HAFETZ, ESQ.
ARTIE MCCONNELL, ESQ.
Assistant United States Attorneys

For the Defendant: LAW OFFICES OF ROBERT G. STAHL LLC
53 Cardinal Drive
3rd Floor, Suite 4
Westfield, NJ 0709
BY: ROBERT G. STAHL, ESQ.
LAURA GASIOROWSKI, ESQ.

Court Reporter: **SOPHIE NOLAN**
225 Cadman Plaza East/Brooklyn, NY 11201
**NolanEDNY@aol.com**
*Proceedings recorded by mechanical stenography, transcript produced by Computer-Aided Transcription*

(In open court.)

(The Hon. Rachel P. Kovner, presiding.)

(Defendant present.)

THE COURTROOM DEPUTY: *The United States of America versus Dzenan Camovic*.

Counsel, state your name for the record.

MR. HEEREN: Good afternoon, Your Honor. Craig Heeren on behalf of the United States. With me are my colleagues, Josh Hafetz and Artie McConnell.

MR. STAHL: Robert Stall and Laura Gasiorowski on behalf of Mr. Camovic, who is seated in the middle.

THE COURT: I understand your client wants to plead guilty to Counts One and Two of the indictment; is that correct?

MR. STAHL: That's correct, Your Honor.

THE COURT: And is and is that correct, Mr. Camovic?

THE DEFENDANT: It's correct.

THE COURT: This is a serious decision and I want to be sure you are making that decision with an understanding of your rights. I will explain those rights to you today and before I accept your guilty plea there are some questions that I have to ask to make sure that this is a valid guilty plea. If you don't understand any of my questions, will you let me know so I can ask the question in a different way.

Everyone is welcome to remain seated. It's easier

with the microphones.

MR. STAHL: Thank you.

THE COURT: And if you want to consult with your attorney at any point during this proceeding, just let me know because I can give you as much time as you need to do that; okay?

THE DEFENDANT: Thank you.

THE COURT: I am going to need you to answer questions under oath today so I will ask Mr. Chan to swear you in.

THE COURTROOM DEPUTY: Please raise your right hand, sir.

(Defendant sworn.)

THE COURT: So, Mr. Camovic, do you understand that you are now under oath and that if you were to answer any of my questions falsely, those answers could later be used against you in a separate prosecution for perjury or for making a false statement?

Yes. What is your full name?

THE DEFENDANT: Dzenan Camovic.

THE COURT: How old are you?

THE DEFENDANT: 22.

THE COURT: How much education have you had?

THE DEFENDANT: High school and some college.

THE COURT: Are you able to speak and understand

English?

THE DEFENDANT: Yes.

THE COURT: And have you been able to understand everything that's been said in court so far today?

THE DEFENDANT: Yes.

THE COURT: And, counsel, have you been communicating with your client in English?

MR. STAHL: Yes, Your Honor.

THE COURT: Mr. Camovic, have you ever been hospitalized or treated for any kind of mental illness?

THE DEFENDANT: Yes.

THE COURT: What was that?

THE DEFENDANT: Depression.

THE COURT: And when did that happen?

THE DEFENDANT: I was -- after the -- after the incident.

THE COURT: Okay. Are you currently receiving any kind of mental health treatment?

THE DEFENDANT: Yes.

THE COURT: And what is that?

THE DEFENDANT: I'm prescribed Zoloft an, an antidepression medication.

THE COURT: Does that medication interfere with your ability to perceive what's going on or to make decisions?

THE DEFENDANT: No.

THE COURT: Any other medications that you're taking aside from the Zoloft?

THE DEFENDANT: No.

THE COURT: Have you ever been treated or hospitalized for any kind of addiction including drug or alcohol addiction?

THE DEFENDANT: No.

THE COURT: And other than the care that you just referenced, receiving treatment for depression, are you currently or have you recently been under the care of a doctor or a psychiatrist for any other reason?

MR. STAHL: Your Honor, a doctor for the injuries, but not for any other psychological reasons.

THE COURT: Okay.

When was the last time you saw a doctor in connection with injuries?

THE DEFENDANT: The last few months.

THE COURT: Are you experiencing any pain or condition that interferes with your ability to understand what's going on today?

THE DEFENDANT: No.

THE COURT: Aside from the Zoloft, have you taken any kind of drugs or medicine or pills or had any alcoholic drinks until the past two days?

THE DEFENDANT: No.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes.

THE COURT: Do you understand what's happening in court?

THE DEFENDANT: Yes.

THE COURT: Counsel, do either of you want any further inquiry in this area?

MR. STAHL: No, Your Honor.

THE COURT: Defense counsel, have you fully discussed this case with Mr. Camovic?

MR. STAHL: We have, Your Honor.

THE COURT: And does he understand the rights that he would be giving up by pleading guilty today?

MR. STAHL: He does.

THE COURT: Is he capable of understanding the nature of those proceedings?

MR. STAHL: He is.

THE COURT: Do you have any doubt about his competence to enter a guilty plea today?

MR. STAHL: No doubt, Your Honor.

THE COURT: Have you advised Mr. Camovic of the maximum and minimum penalties and fine that can be imposed in this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you discussed with him the

effect of the sentencing guidelines?

THE DEFENDANT: Yes.

THE COURT: Mr. Camovic, have you reviewed a copy of the indictment that contains the charges in this case against you?

THE DEFENDANT: Yes.

THE COURT: And have you fully discussed the charges and the case in general with your attorney?

THE DEFENDANT: Yes.

THE COURT: Okay. So I want to go over with you the charges that you would be pleading guilty to. In Count One of the indictment, you are charged with Hobbs Act robbery in violation of 18 United States Code, Section 1951(a) and 3551. In the following sections, the indictment alleges on or about June 3rd of 2020 within the Iron District of New York, you robbed a New York City Police Department officer by taking the officer's firearm and the indictment alleges that you did thereby knowingly and intentionally obstruct, delay and affect commerce.

In Count Two of the indictment, you are charged with possessing, brandishing and discharging a firearm in furtherance of a crime of violence; specifically the charge is that on June 3rd of 2020 in this district you knowingly and intentionally used and carried a firearm during and in relation to the crime of violence charged in Count One and the

indictment charges you knowingly and intentionally possessed that firearm in furtherance of the crime of violence in Count One and that the firearm was brandished and discharged.

The indictment also contains forfeiture allegations. The Government is seeking forfeiture of any property, real or personal, constituting or derived from proceeds of the robbery in Count One and the Government is also seeking forfeiture of the firearm and ammunition involved in the offenses charged in the indictment.

If the property that it's seeking to forfeit can't be located because of something you have done or failed to do, the Government may seek to forfeit some other property of yours as a substitute. Do you understand those charges and forfeiture allegations?

THE DEFENDANT: Yes.

THE COURT: And have you had enough time to discuss with your attorneys whether or not to plead guilty to those charges?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with the counsel, representation and advice that you have gotten in this case from your attorneys?

THE DEFENDANT: Yes.

THE COURT: Okay. So I want to go over your right to a trial and the related rights which you would be giving up

if you plead guilty today. First, you have a right to continue to plead not guilty. Nobody can be forced to plead guilty in a case against them. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you continue to plead not guilty, you would have the right under the Constitution and laws of the United States to a speedy and a public trial by a jury. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At a trial you would be presumed to be innocent and the Government would have to prove your guilt beyond a reasonable doubt. Do you understand?

THE DEFENDANT: Yes.

THE COURT: At a trial you would have the right to the assistance of counsel for your deference.

Counsel, are you retained or appointed?

MR. STAHL: Retained, Your Honor.

THE COURT: So you currently have counsel who have been retained to represent you, but if at any point you could not afford retained attorneys, I would appoint attorneys to represent you for free and they would represent you at trial and at every other stage of the proceedings. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial you would have the right to see

and hear all the witnesses and have them cross-examined in your defense. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At a trial you would have the right not to testify unless you voluntarily chose to do so in your own defense. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At a trial you would have the right to compel witnesses to come to court to testify as part of your defense. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you decided not to testify or not to put on any evidence at trial, those facts could not be used against you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you enter a plea of guilty and if I accept your plea and I accept the plea agreement, there will be no trial and you will have waived or given up your right to a trial as well as all the other rights associated with a trial that I just described. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty I will simply enter a judgment of guilt on the basis of your guilty plea and the Government will be free of any responsibility to prove your guilt. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty I will also have to ask you questions about what you did in order to satisfy myself that you are actually guilty of the charges that you are pleading guilty to and you will have to answer my questions and acknowledge your guilt. Thus, you will be giving up your right not to incriminate yourself. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand each of the rights that I just explained?

THE DEFENDANT: Yes.

THE COURT: And are you willing to give up your right to a trial and the other rights I just described?

THE DEFENDANT: Yes.

THE COURT: I understand you are pleading guilty pursuant to a plea agreement with the government. I have a copy. There's a signature on the line for your name on the last page. Is this your signature (indicating)?

THE DEFENDANT: Yes.

THE COURT: Did you have the opportunity to read and discuss this agreement with your attorneys before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you have enough time to do that?

THE DEFENDANT: Yes.

THE COURT: Did you understand the plea agreement when you read it?

THE DEFENDANT: Yes.

THE COURT: Counsel, did you have enough time to go over this plea agreement with your client?

MR. STAHL: We did, Your Honor.

THE COURT: Do you have any questions about this plea agreement as we sit here today?

THE DEFENDANT: No.

THE COURT: Does this agreement represent your entire understanding with the Government?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promise or assurance to you that's not in the plea agreement in order to get you to accept this agreement?

THE DEFENDANT: No.

THE COURT: Has anybody threatened you in any way to get you to accept this plea agreement?

THE DEFENDANT: No.

THE COURT: And, counsel, were all the formal plea offers that you received from the Government in this case conveyed to Mr. Camovic?

MR. STAHL: Yes, Your Honor.

THE COURT: I have already discussed the charges and

the forfeiture allegations connected to your guilty plea. I want to go over the possible penalties for the charges that you would be pleading guilty to.

So, Count One, the Hobbs Act robbery count carries a maximum term of imprisonment of 20 years. There's no mandatory minimum term. Any term of imprisonment on this count could be followed by a period of supervised release of up to three years. Supervised release refers to a period of time during which you would be subject to supervision by the Probation Department after completing any term of imprisonment. You would have to follow the rules of supervised release and if you violated those rules, you could be sent back to prison without a jury trial to serve an additional period of up to two years on this charge without any credit for the time you previously served in prison and without any time for credit for any time you previously spent on post-release supervision. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you violate the conditions of supervised release, you could be given additional time in prison?

THE DEFENDANT: Yes.

THE COURT: Count One also carries a maximum possible fine of $250,000. There's also a mandatory special assessment of $100 that I have to impose. And, in addition, I

have to order restitution which is mandatory in the full amount of each victim's loss. Count Two carries a maximum term of imprisonment of life. There's a mandatory minimum term of imprisonment of ten years. This is the count of discharging a firearm in furtherance of a crime of violence. Because this crime carries a maximum sentence of 25 years or more, Probation is not an available sentence for this particular offense.

Any term of imprisonment on this count could be followed by a period of supervised release of up to five years on this count and if you violated the conditions of your supervised release in connection with this count, you could be sent back to prison without a jury trial and serve an additional period of up to five years without any credit for the time you previously spent in prison or without any credit for the time that you spent on post-release supervision. Do you understand that?

THE DEFENDANT: Yeah.

THE COURT: This count also carries a maximum possible fine of $250,000. It also carries a mandatory $100 special assessment and, again, on this count restitution is mandatory in the full amount of each victim's loss. The sentences of imprisonment of two counts have to run consecutively, not at the same time, so they have to be served one after the other.

In addition, in connection with these two counts you're agreeing to forfeiture described on paragraphs six to eleven of the plea agreement. But, summarized briefly you are agreeing to forfeit a Sig Sauer P226 black semiautomatic handgun and ammunition seized from you on June 3, 2020 you agree that that property is subject to forfeiture and agreeing to an entry of an order of forfeiture concerning those items and if you were to fail to surrender those items, you're agreeing to forfeit your own property up to the value of these items.

I take it you are not a United States citizen?

THE DEFENDANT: Yes.

THE COURT: You're a citizen of Bosnia, Herzegovina?

MR. STAHL: We actually have a state list, but that's where he was originally from.

THE COURT: It's not United States?

MR. STAHL: That's correct.

THE COURT: As a result of your guilty plea you may be subject to removal or deportation from the United States and I think this is discussed in greater detail on paragraphs 12 to 18 of your plea agreement. You are agreeing to the entry of a stipulated judicial order of removal?

THE DEFENDANT: Yes.

THE COURT: So, counsel, in paragraph 12, it says specifically the defendant admits he's a native and citizen of

Bosnia Herzegovina.

MR. STAHL: He was certainly born there, Judge. We just don't know the status given what's gone on in that area of the world whether he still has official citizenship or not but he certainly was born there, so he would be a citizen. We don't object to that language.

THE COURT: Your client is agreeing that he is a citizen of Bosnia Herzegovina?

MR. STAHL: Yes.

THE COURT: Is that right, Mr. Camovic?

THE DEFENDANT: Yes.

THE COURT: As part of this plea agreement you are agreeing that you're removable from the United States as of the time of sentencing. You are agreeing not to challenge the stipulated judicial order of removal from the United States that will be entered at the time of sentencing. You are giving up any right to a hearing before any immigration judge to question your removal and you are waiving your right to any form of protection from removal.

Do you understand all of those immigration-related rights that you are giving up?

THE DEFENDANT: Yes.

THE COURT: Okay. I want to talk briefly about the sentencing guidelines. So under federal law there are sentencing guidelines for judges to follow in determining the

sentence in a criminal case. Those guidelines are advisory so there are factors to be considered along with all the facts and circumstances of your case and all the sentencing factors set out in federal law in determining your sentence.

Have you and your attorney discussed how the advisory guidelines might apply in your case?

THE DEFENDANT: Yes.

THE COURT: And has the Government estimated what the range is likely to be?

MR. HEEREN: Yes, Your Honor, it has.

THE COURT: Would you put it on the record?

MR. HEEREN: Yes, Your Honor. The total guidelines calculations for Count One the offense level is 45, based on an offense level of 20 and additional six levels for a victim sustaining a permanent or life threatening bodily injury. An additional point for a firearm being taken or an object of the offense. An additional six-level enhancement for the person, the victim being an official victim and an additional 12-level enhancement for the terrorism enhancement at 3-A 1.4. That calculates to 45; though consistent with the plea the Government would agree to a total of three-point reduction based on acceptance of responsibility.

THE COURT: Okay.

And defense counsel I assume you are stipulating to those guidelines calculations as part of this plea; is that

correct?

MR. STAHL: That's correct, Your Honor.

THE COURT: Mr. Camovic, you should understand that even though you and the Government have made these guidelines calculations, these are just estimates. They could be wrong. I have to determine what the guideline range is in your case and I can't do that until after a pre-sentence violation report has been prepared by the Probation Department and then you and the Government have an opportunity to read that report and to challenge any facts you think it got wrong, to make any challenges that you have to the application of the guidelines that's recommended by the probation officer. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that under some circumstances I have the authority to depart upward or downward from the advisory guideline range which could lead to a sentence that's greater or lesser than the advisory guideline sentence?

THE DEFENDANT: Yes.

THE COURT: As you sit here today there's no guarantee as to a particular guideline range. Do you understand that if the guideline range in the pre-sentence report or the advisory guideline range as I calculate it is different from the guidelines range that the Government or

your attorney might advise you of or that you expect, but won't be able to take your guilty plea back on that basis?

THE DEFENDANT: Yes I understand that.

THE COURT: Okay. So this is a plea agreement under 11(c)(1)(C). Under this agreement you are agreeing with the Government that an aggregate sentence of 360 months of imprisonment and a supervised release term of five years is appropriate and the parties are calculating that period of time to be inclusive of time in New York State custody since arrest. The parties are stipulating that the sentence they're agreeing on would be concurrent with the sentence or sentences in a related state case *The People versus Camovic* which is indictment number 928-2020 they're anticipating that the sentence on those two -- the defendant's sentence will be served in federal custody.

So I am not going to decide today whether to accept the plea agreement and the parties' recommendation about a sentence. I am not going to decide that until a Pre-Sentence Investigation Report has been prepared and I reviewed that report but after that I will either accept or reject the plea agreement. If I reject it, you and the U.S. Attorney's office would have the opportunity to withdraw from or vacate the plea, do you understand that?

THE DEFENDANT: Yes.

THE COURT: Any other edification that the parties

one on that rule?

MR. STAHL: Your Honor, just a point of clarification the 360 months in paragraph two. The Government and the defense agree to recommend that Your Honor will take into account the 24 months he's been in Riker's to reduce that 360 by 24 months. Just a clarification and then it will run -- the state sentence will run concurrent once the federal sentence is imposed.

THE COURT: Yes, yes, that's my understanding of what the parties are agreeing to.

MR. STAHL: Sorry, Your Honor. One more thing, tomorrow just so Your Honor knows, the state has to waive primary custody jurisdiction on the record tomorrow so that Mr. Camovic is under BOP primary federal jurisdiction as part of this sentencing agreement as well. We will do that on the record tomorrow morning as Kings County.

THE COURT: Okay. It sounds like, at least according to this paragraph, the state has agreed to waive primary jurisdiction and custody already in writing; is that right?

MR. STAHL: It hasn't been put on the record.

THE COURT: My impression is that once Mr. Camovic pleads guilty pursuant to this plea agreement he has pled guilty and he would have an opportunity to withdraw from the plea agreement under one circumstance which is if I didn't

discuss the recommendation of the parties described in this agreement regarding sentence.

MR. STAHL: Correct.

THE COURT: All right. You should also understand that there's no parole in the federal system. If you're sentenced to prison you won't be released on parole. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Under some circumstances you or the government would have the right to appeal a sentence that I imposed in a criminal case, but this agreement contains an appeal waiver and by entering into this plea agreement and entering a plea of guilty you will have waived or given up your right to appeal or collaterally attack any part of your sentence so long as I sentence you to 360 months imprisonment or less. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about the rights that you are giving up, the punishments you face, the plea agreement, the nature of the charge or anything else related to this case?

THE DEFENDANT: No.

THE COURT: Can I ask the Government one question about the parties' agreement? So, is there a -- Mr. Camovic is agreeing to be removed. My impression of when supervised

release is appropriate is when somebody is being removed, the answer is usually we're discouraged from doing that, but you're contemplating that I would. I don't know if you want to address that later or tell me today why the parties are contemplating a supervised release term for somebody who is being removed.

MR. HEEREN: Yes, Your Honor, I think we'll follow up with you on that.

THE COURT: That is fine. Okay, are you ready to plead guilty today Mr. Camovic?

THE DEFENDANT: Yes.

THE COURT: And, defense counsel, do you know of any reason why your client should not plead guilty today?

MR. STAHL: No, Your Honor.

THE COURT: Mr. Camovic, what is your plea to Counts One and Two of the indictment?

THE DEFENDANT: Guilty.

THE COURT: Are you making your guilty pleas voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anybody threatened you or forced you to plead guilty?

THE DEFENDANT: No.

THE COURT: Other than your plea agreement with the Government has anyone made any promise that caused to plead

guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made any promises to you aside from the agreement that I just described contained in the plea agreement and the parties agreeing on a proposed sentence, has anyone made any promises to you about what your sentence will be?

THE DEFENDANT: No.

THE COURT: Can the Government give me the elements of the two offenses to which Mr. Camovic will be pleading guilty?

MR. HEEREN: With regard to Count One, Hobbs Act robbery, the elements of the offense are first the defendant knowingly obtained or took the of personal property of another. Second, that the defendant took this property against this victim's will by actual or threatened force, violence or fear of jury whether immediately or in the future. And, third, that as a result of the defendant's actions interstate commerce or an item moving in interstate commerce was delayed, obstructed or affected in any way or degree.

With regard to Count Two, the firearm discharge offense, the elements are, first, that the defendant committed a crime of violence such as Count One in this case for which he might be prosecuted in the court of the United States. Second, that the defendant knowingly used or carried a firearm

during and in relation to the commission of or knowingly possessed a firearm in furtherance of the crime charged in Count One and, third, the defendant discharged that weapon.

THE COURT: Okay. So, Mr. Camovic, can you tell me what you did that makes you guilty of these two crimes?

MR. STAHL: With your permission, if I could allocute, it would be easier. There is a level of nervousness --

THE COURT: What do you mean if you could allocute?

MR. STAHL: Ask him questions.

THE COURT: Sure.

MR. STAHL: Mr. Camovic, late on the night of June 3rd and into June 4, 2020 were you in Brooklyn, New York?

THE DEFENDANT: Yes.

MR. STAHL: Were you in the vicinity of the corner of Flatbush and Church Avenues?

THE DEFENDANT: Yes.

MR. STAHL: While there did you approach two uniformed New York City police officers?

THE DEFENDANT: Yes.

MR. STAHL: Did you assault those officers?

THE DEFENDANT: Yes.

MR. STAHL: Did you wrestle one of those officers' service handgun from him by force and fire it several times?

THE DEFENDANT: Yes.

MR. STAHL: Did you unlawfully take the officers property, that is his New York City issued 9 millimeter handgun and ammunition from him?

THE DEFENDANT: Yes.

MR. STAHL: Did you take those items from his person and fire several shots during the course of your robbery of the handgun?

THE DEFENDANT: Yes.

MR. STAHL: Did you do so knowingly and willfully?

THE DEFENDANT: Yes.

MR. STAHL: Are you, in fact, guilty of Counts One and Two of the indictment?

THE DEFENDANT: Yes.

MR. STAHL: Are you pleading guilty today because you are, in fact, guilty?

THE DEFENDANT: Yes.

MR. STAHL: We would submit that that sufficiently covers the elements of the offenses, Your Honor.

THE COURT: Government, is there something you want to put on the record about interstate commerce?

MR. HEEREN: Yes, Your Honor. If the government were to precede to trial, the government would present additional evidence related to the interstate commerce element as it relates to the Hobbs Act robbery; in particular that the New York City Police Department operates interstate and

internationally in some instances and that in particular with regard to the firearm, through the theft of that firearm interstate commerce would be affected because the New York City Police Department would have to among other things purchase a new firearm.

THE COURT: And the NYPD would purchase that firearm in interstate commerce in some way.

MR. HEEREN: Yes.

THE COURT: Anything else the Government needs by way of allocation?

MR. HEEREN: No, Your Honor.

THE COURT: Based on my observations of Mr. Camovic here in court and his answers to my questions and to the questions of his counsel and based on the representations of his counsel, I find that the defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea and that his plea of guilty to these two counts is knowing and voluntary and supported by an independent basis, in fact, containing the essential elements of the offense.

I think that even though it's a 11(c)(1)(C) I am going to accept the plea and the defendant has the right to withdraw if there's a basis later.

MR. HEEREN: That's my understanding.

THE COURT: I accept the plea of guilty to Counts

One and Two in this case. The next is the preparation of a pre-sentence report by the Probation Department to assist in extension.

Mr. Camovic, you will be asked to give information for that report.

Defense counsel, do you want to be present for that interview?

MR. STAHL: Yes, Your Honor.

THE COURT: And then after that report is complete, Mr. Camovic, you and your counsel will have the opportunity to read that report and file any objections to that report in advance of sentencing.

Mr. Chan, do we have a date for sentencing?

THE COURTROOM DEPUTY: June 30th at 2 p.m. It's a Thursday.

THE COURT: Is that date acceptable to the parties?

MR. HEEREN: Yes, Your Honor.

MR. STAHL: Yes, Your Honor.

THE COURT: Okay. So that's our date for sentencing. Anything else for us to take up today?

MR. HEEREN: Nothing from the Government, Your Honor.

THE COURT: I see that I have been provided with a notice of intent to request removal. These are documents that you're anticipating that would be entered at the time of

sentencing; is that right?

MR. HEEREN: Yes, Your Honor. They're signed by both parties but pursuant to the plea they don't need to be entered until sentencing.

THE COURT: Anything else?

MR. STAHL: No, Your Honor.

(Matter adjourned.)

- ooOoo -